UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

New Millennium Consulting,  Civ. No. 10-1256 (PAM/AJB)
Inc., and Pacific Management
Systems, Inc.,

                Plaintiffs,

v.  **MEMORANDUM AND ORDER**

United HealthCare Services, Inc.,

                Defendant.

---

This matter is before the Court on Defendant's Motion for Summary Judgment. For the reasons that follow, the Motion is granted.

**BACKGROUND**

Plaintiffs New Millennium Consulting, Inc. and Pacific Management, Inc., are consulting firms who performed information technology services for Defendant United HealthCare Services, Inc. ("UHS"). Plaintiffs, however, were not contractors for UHS directly. Rather, UHS contracted with a company called Chimes, and Chimes in turn oversaw all subcontractors who performed duties at UHS. There are two agreements at issue: the first is the Centralized Vendor Management ("CVM") contract between Chimes and UHS, the second is the Subcontractor Supplier Agreement ("SSA") between Chimes and each subcontractor. Because there are two subcontractor Plaintiffs, there are two SSAs, but the SSAs for all UHS subcontractors are identical in all relevant respects.

This lawsuit arises out of Chimes's failure to pay the subcontractors for work

performed in November 2007. There is no dispute that UHS paid Chimes[1] for the subcontractors' work, but Chimes in turn did not pay the individual subcontractors. According to Plaintiffs, the amount of the unpaid subcontract invoices for that month totaled more than $14 million. For the two contractors who are the only Plaintiffs remaining here, however, the total unpaid is around $60,000. Plaintiffs contend that Chimes was an agent of UHS, such that UHS should be liable for the duties Chimes assumed in the subcontractor agreements. After the bankruptcy, and with permission of the bankruptcy trustee, UHS executed contracts directly with the subcontractors, eliminating Chimes from the equation.

The only claim remaining in the case is Count 1 of the Amended Complaint, which alleges breach of contract under an agency theory. UHS seeks summary judgment on this Count.

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a

---

[1] An entity called ECG purchased Chimes in 2007, and declared bankruptcy in early 2008. The parties refer to the entity as Chimes, which is also how the name appears in the relevant contracts.

whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. at 323; Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

**A.    "Integrated" CVM**

Much of Plaintiffs' argument depends on their contention that all of the agreements—the SSAs, the CVM, and the Participating Vendor Agreements ("PVA")—are in fact a single "Integrated CVM" that must be read as one agreement and interpreted accordingly. It is certainly true that, under Minnesota law, "instruments executed at the same time, by the same parties, relating to the same transaction will be considered and construed together, since they are, in the eyes of the law, one contract or instrument." Farrell v. Johnson, 442 N.W.2d 805, 806 (Minn. Ct. App. 1989). Even if all of the agreements at issue were executed at the same time and by the same parties,[2] and were related to the same

---

[2] A case on which Plaintiffs rely implies that, under Minnesota law, different agreements may be construed as one contract even if the parties to the various agreements are different. See Dayton Dev. Co. v. Gilman Fin. Servs., Inc., 419 F.3d 852, 857 (8th Cir. 2005) (citing Peterson v. Miller Rubber Co. of N.Y., 24 F.2d 59, 62 (8th Cir. 1928)). Although Dayton cited Peterson as applying Minnesota law, in fact the cases on which the Peterson court relied for its determination that various agreements executed by different

3

transaction, construing them as one contract is not automatic, but rather "is governed by the intent of the parties manifested at the time of contracting and viewed in light of the surrounding circumstances." Id. at 807.

Here, there is no evidence that the SSAs were executed at the same time as the CVM, and indeed it is highly unlikely that they were. The CVM must have come first, with the execution of the SSAs logically following. In addition, the SSAs are not part of the same transaction: the CVM memorialized an agreement between UHS and Chimes to outsource the hiring and other administrative responsibilities for subcontractors, and the SSAs memorialized the subcontractors' agreements regarding pay scale, scope of duties, and the like. Finally, the parties to the SSAs are not the same as the parties to the CVM.

Even if the SSAs and CVM should be read as one integrated contract, however, there is no logical reason to include the PVAs in that single contract. Although the PVAs are in many respects similar to the SSAs, the PVAs governed consultants rather than subcontractors. Neither of the two Plaintiffs nor any member of the putative class falls into this category. The reason Plaintiffs insist that the PVAs are part of the so-called "Integrated CVM" is that only in the PVAs does UHS acknowledge that Chimes is acting in a limited agency capacity. But because Plaintiffs' claims do not arise out of the PVAs, these

---

parties could constitute a single contract were all Missouri cases. See Peterson, 24 F.2d at 62. In Minnesota, agreements executed by different parties cannot constitute a single contract. See, e.g., Fraser v. Fraser, 702 N.W.2d 283, 291 (Minn. Ct. App. 2005) (stating that Farrell was "inapposite" because the instruments at issue "neither involved the 'same parties' nor related to the 'same transaction'" (quoting Farrell, 442 N.W.2d at 806)).

agreements are not at issue. More to the point, the PVAs involve individuals and entities who are not involved in this lawsuit, and the Court will not construe an agreement signed by parties not present in this case to be part of the governing agreement in this case.

Plaintiffs also miss an important step in their argument. Even assuming Chimes was UHS's agent, that does not mean ipso facto that UHS is liable under the SSAs. Plaintiffs still must prove that UHS breached the contracts. An agency relationship does not necessarily mean that one can merely substitute "UHS" for "Chimes" in the SSAs and be done with it. The breach of contract aspect is discussed below. First, however, it is necessary to address whether Chimes was indeed an agent of UHS under the CVM and SSAs.

**B.     Agency**

"Agency is the fiduciary relationship that results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." A. Gay Jenson Farms Co. v. Cargill, Inc., 309 N.W.2d 285, 290 (Minn. 1981). "Although the existence of an agency relationship is generally a question of fact, summary judgment may be appropriate if the evidence is conclusive." Children's Broad. Corp. v. Walt Disney Co., 245 F.3d 1008, 1021 (8th Cir. 2001) (citing Smith v. Woodwind Homes, Inc., 605 N.W.2d 418, 423 (Minn. Ct. App. 2000)).

The terms of the CVM would seem to foreclose any argument that Chimes was UHS's agent. In a section entitled, "RELATIONSHIP OF THE PARTIES," the CVM states:

> The parties intend to create an independent contractor relationship and nothing contained in this Agreement shall be construed to make either UHS or Chimes partners, joint venturers, principals, agents, or employees of the other;

5

> provided, however, that the foregoing shall not be construed as preventing Chimes from performing any of its obligations under this Agreement. Neither party shall have any right, power, or authority, express or implied, to bind the other.

(Foster Aff. Ex. 1 § 5.1 (CVM).) Plaintiffs' argument about agency is two-fold. First, Plaintiffs contend that the Court should ignore this section and focus on the evidence of the relationship between Chimes and UHS. Second, Plaintiffs maintain that the "provided, however" clause establishes that Chimes was in fact UHS's agent, despite the other language of this section.

1. Parties' relationship

As an initial matter, the disclaimer of agency in the CVM is sufficient to establish that UHS did not intend Chimes to be its agent, and Chimes did not intend to so act. See Children's Broad. Corp., 245 F.3d at 1022 (finding that an express disclaimer of agency foreclosed any argument that either party consented to a principal/agent relationship). And the parties' intent is paramount: "before a court will impose a legal obligation on a person to act like an agent, the plaintiff must first introduce factual evidence that [the principal] sought this arrangement and that the alleged agent consented to it." PMH Props. v. Nichols, 263 N.W.2d 799, 803 (Minn. 1978); see also Cargill, 309 N.W.2d at 290 (noting that to establish agency by circumstantial evidence, a party must establish that the principal "consented to the agency since one cannot be the agent of another except by consent of the latter").

Plaintiffs argue that the disclaimer in the CVM is not effective as to those not party

to the contract. See Bd. of Trade v. Hammond Elevator Co., 198 U.S. 424, 437 (1905) (implying that express disclaimer of principal-agent relationship would be decisive between parties involved in the disclaimer). But Plaintiffs cannot make this argument, because Plaintiffs insist that they were in fact parties to the CVM. As noted, all of Plaintiffs' arguments depend on construing the CVM and SSAs as one integrated contract. Thus, Plaintiffs' position must be that they are parties to the CVM, and thus they are bound by the disclaimer.

Even if the disclaimer is not binding on Plaintiffs, however, it is persuasive evidence of UHS's intent, and it is the intent of UHS that controls whether Chimes was in fact UHS's agent. See Mikulay v. Home Indem. Co., 494 N.W.2d 464, 467 (Minn. Ct. App. 1989) (proof of agency "rests not with the acts or declarations of the alleged agent, but rather with the will of the principal"). The alleged "control" on which Plaintiffs rely for their arguments about agency is nothing more than a company ensuring that another entity will fulfill its obligations. There is no evidence, for example, that UHS exercised control over the day-to-day operations of Chimes, or indeed that Chimes's relationship with UHS was any different than Chimes's relationship with any of the other companies, such as Northwest Airlines and St. Paul Travelers, for which Chimes provided administrative services. The evidence in the record is conclusive that Chimes was not UHS's agent, and summary judgment may be granted on this basis alone.

2. "Provided, however" clause

Plaintiffs claim that the "provided, however" clause in the disclaimer is evidence that

Chimes was in fact UHS's agent. The clause at issue states: "provided, however, that the foregoing [agency disclaimer] shall not be construed as preventing Chimes from performing any of its obligations under this Agreement." Plaintiffs contend that the Court must construe this clause to mean that "Chimes is not an agent (unless it must act as an agent to perform its contractual obligations)." (Pls.' Opp'n Mem. at 25 (emphases omitted).[3]) But this is not what the "provided, however" clause says. The "provided, however" clause merely states that the fact that Chimes is not UHS's agent shall not prevent Chimes from fulfilling its duties under the CVM. It says nothing about Chimes having to act as UHS's agent for any purpose.

Plaintiffs insist that the Court must follow the rule of contract construction that says that the interpretation of contracts must give "'reasonable, lawful, and effective meaning to all the terms.'" (Pls.' Opp'n Mem. at 38 (quoting Restatement (Second) of Contracts § 203(a)).) Here, Plaintiffs' interpretation of the "provided, however" clause is not reasonable. Rather, the "provided, however" clause merely states the obvious: Chimes is not excused from its duties under the parties' agreement because it is not an agent. Plaintiffs'

---

[3] The Court reminds the parties that the use—or in the case of the briefs here, the overuse—of italics for emphasis is neither necessary nor appropriate. "A sound general rule is to use italics sparingly. If they are used too freely in the text of a brief, they are apt to be regarded as (what indeed they frequently are in fact) insults to any judicial reader's intelligence. It is perfectly possible to write a strong, forceful, even a fighting brief, without a single word italicized for emphasis." Frederick Bernays Wiener & Bryan A. Garner, Briefing and Arguing Federal Appeals 250 (5th prtg. 2008). Or, as one law firm's "Law Clerks' Top 10 Tips for Effective Appellate Advocacy" put it, "Overuse of emphasis (SCREAMING IN ALL CAPS or **overly highlighting important points**) is just plain annoying and not very persuasive." http://www.karrtuttle.com/PDF'S/tentips.pdf.

argument on this point is without merit.

**C.      Breach of Contract**

Even if Chimes is UHS's agent, however, Plaintiffs' breach of contract claim would still fail.  A principal "is subject to liability upon an authorized contract in writing . . . although it purports to be the contract of the agent, unless the principal is excluded as a party by the terms of the instrument or by the agreement of the parties." Restatement (Second) of Agency § 149.  The instrument here, the SSA, expressly forecloses Plaintiffs' breach of contract claim by providing that "[t]he parties understand and acknowledge that UHS is not a party to this Agreement."  (Wood Aff. Ex. 3 at Recital 3 (SSA).)  Plaintiffs cannot now claim that they did not know what they were signing: this exclusion is on the first page, is set off by itself, and is not hidden by any other language. "People who sign documents which are plainly written must expect to be held liable thereon. Otherwise written documents would be entirely worthless and chaos would prevail in our business relations."  Watkins Prod. Inc. v. Butterfield, 144 N.W.2d 56, 58 (Minn. 1966).

Plaintiffs knew when they signed the SSAs that UHS was not a party to those SSAs. There is no clearer example of an agreement that excludes the alleged principal as a party. Plaintiffs' argument that UHS is now liable under the SSAs fails.

9

**CONCLUSION**

The evidence conclusively establishes that Chimes was not UHS's agent for the purposes of the SSAs, and that UHS is not liable under the SSAs. Accordingly, **IT IS HEREBY ORDERED that**:

1. Defendant's Motion for Summary Judgment (Docket No. 72) is **GRANTED**; and

2. The Amended Complaint (Docket No. 11) is **DISMISSED with prejudice**.


**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: <u>Monday, June 20, 2011</u>

                                        *s/ Paul A. Magnuson*
                                        Paul A. Magnuson
                                        United States District Court Judge